JOHN A. BOYDEN, JOHN S. HENDERSON, EXECUTOR AND TRUSTEE, ET AL. v. J. R. HAGAMAN.

(Filed 19 May, 1915.)

**1. Deeds and Conveyances — Descriptions — Calls—Adjoining Tracts—Interpretation.**

Where the *locus in quo* in an action of trespass involving title to lands is made to depend upon its location within the boundaries of a certain deed introduced in evidence, giving a beginning point, with further description, and then to J. H.'s line, "thence with his line to where it meets with T. H.'s line, thence with his line around to the mouth of the still-house branch, where it enters into Buffalo Creek," etc., and J. H. and T. H. are the adjoining owners at the places indicated, and there is no dispute as to the calls up to that point: *Held*, the legal method of locating the deed is to run directly from the last known point of the H. lines to the next call in the deed that was fixed and established, towit, the "mouth of the still-house branch."

**2. Deeds and Conveyances—Description—Adjoining Lines—"Fixed and Established."**

The doctrine requiring that lines of another tract called for in a conveyance of lands shall be fixed and established with assured precision is one that is, at times, called for where there is conflict in a deed between such calls and that by course and distance, and does not always or necessarily prevail where such conflict is not presented.

**3. Same—"Run and Marked"—Interpretation.**

The rule that lines of adjoining tracts called for in a conveyance of lands shall be fixed and established does not necessarily require that these lines must have been "run and marked"; but if they may be fixed and established in accordance with the recognized rules of survey and location of deeds they come within the meaning of the rule and so fill the description.

**4. Deeds and Conveyances—Boundaries—Declarations—Evidence.**

The admission in evidence of the declarations of a deceased owner of lands as to the location of the boundaries of his deed is not objectionable as contradicting the boundaries given in the deed, when the court has explicitly charged the jury that they could in no wise change the description as it therein appeared, and were only relevant on the question of boundary and to the extent they tended to fix the location of the lines called for.

**5. Deeds and Conveyances — Declarations — Possession—Evidence—Against Interest.**

    The declarations of a deceased owner of lands while in possession, defining the limits of his claim, are competent as evidence; and especially so when they are made against his interest.

**6. Deeds and Conveyances—Trustee—Declarations—Evidence.**

    The general rule that the declarations of a trustee are not competent as against the interest of the beneficiary does not apply when made in the course and performance of declarant's duties as trustee, and when he was in present possession and control of the lands, asserting his ownership under a deed.

APPEAL by plaintiff from *Harding, J.,* at November Term, 1914, of CALDWELL.

Civil action of trespass to realty, involving also an issue of title.

There were facts in evidence tending to show that, in 1880 and 1881, John A. Boyden, now deceased, acquired title to several hundred acres of land in Caldwell County, lying on both sides of Buffalo Creek, a portion of which he held in his own right under a deed from Thomas Pipes, and the remainder he held under a deed of trust from F. P. Cottrell to secure a debt due to his wife, Mary; that Cottrell lost his right of redemption by reason of adverse possession and lapse of time in favor of John A. Boyden and wife, and, on suit brought to the Superior Court of Caldwell County by Bernhardt, purchaser and assignee of Cottrell, it was so adjudged. See case of *Bernhardt v. Hagaman, John S. Henderson, trustee, and John A. Boyden, etc.,* reported in 144 N. C., p. 526. In that suit defendants also asserted title in John A. Boyden under a deed of the sheriff for taxes, etc.

It further appeared that, in December, 1889, John A. Boyden and wife, Mary, and John S. Henderson, trustee, conveyed a portion of said land, lying east of Buffalo Creek, to defendant John R. Hagaman, the deed containing descriptive terms as follows: "Situate, lying, and being in the county of Caldwell and State of North Carolina, bounded as follows, towit: Beginning at the intersection of Joe's Fork and Buffalo's Creek, and runs thence up the east bank of Buffalo's Creek to the rock cliff or bluff some 25 yards above dwelling-house, thence northeast along the highest part of the ridge to Richard Pipes' east and west line, thence east with Richard Pipes' line to John Hawkins' line, thence with his line to where it meets Thomas Hawkins' line, thence with his line around to the mouth of the still-house branch where it empties into Buffalo Creek, thence up the bank of said creek to the beginning. This deed is intended to include all the Thomas Pipes land lying east of Buffalo Creek and up along the east bank of said creek to the big rock cliff where the high foot-log used to be, and then east of a line running northeast from said cliff along the highest part of said ridge to Richard Pipes' east and west line, thence with his line and Thomas Hawkins'

line to the east bank of Buffalo Creek, and up said creek bank to the beginning. All mineral rights and privileges are excepted and reserved to the said parties of the first part and their heirs and assigns; with the right on the parties of the first part to enter upon the said lands and develop the mineral deposits and mines thereon, if there be any such. The number of acres hereby conveyed being 200, more or less."

That John R. Hagaman entered, claiming under said deed the land in controversy; cut the timber and exercised other acts of ownership.

Mary Boyden, the wife and one of the grantors in defendant's deed, having died, this suit was instituted by John A. Boyden, the other grantor, and his children, who were also the children and heirs at law of Mary Boyden, deceased, and John S. Henderson, trustee and executor, against John R. Hagaman, alleging that the deed in question only conveyed the Thomas Pipes land or a portion of it, constituting the northern part of defendant's claim, and that it did not convey any of the Cottrell land east of Buffalo Creek; this last being the land in controversy.

The defendant contended that his deed conveyed the Pipes land and all that part of the Cottrell land lying south of the Pipes land and east of Buffalo Creek. It appeared, further, that John A. Boyden died in 1912, and the suit was thereafter prosecuted by the other parties plaintiff, and further, by estimate, that the land within the boundaries as claimed by plaintiff amounted to about 162 acres.

On the issue as to title there was a verdict for defendant. Judgment pursuant to verdict, and plaintiff excepted and appealed.

*J. W. Whisnant, Edmund Jones, Council & Yount for plaintiff.*
*W. C. Newland, Mark Squires, T. M. Newland for defendant.*

HOKE, J. We have given the case most careful consideration and find no error in the proceedings below, assuredly none that gives the plaintiffs any just ground of complaint.

The beginning corner of defendant's deed, at the junction of Joe's Fork and Buffalo Creek, was admitted, and there was no dispute between the parties as to the location of the lines around the northwestern and northern part of the land from that point to the figure 9, the northeastern corner of the land, being the point where the "John Hawkins line meets the Thomas Hawkins line," as set out in defendant's deed.

There were facts in evidence tending to show that Thomas Hawkins owned or was in possession of and claiming lands on the east of the land in question and on the south of it on both sides of Buffalo Creek, and, under the charge of the court, the jury have necessarily found that, from the figure 9 south to 8-7-6-5-4-3-2-1-24-23-22, to a point on the creek at 22, 16 poles south of the mouth of the still-house branch, there were lines of the Thomas Hawkins land, called for in defendant's deed, fixed, established, and continuous.

There were facts in evidence to support the finding, and, this being true, his Honor correctly held that the legal method of locating the deed would be to run directly from 22, the last known point of the Hawkins lines, to the next call in the deed that was fixed and established, towit, the "mouth of the still-house branch."

The ruling is in accord with our decisions applicable to the question, *McPhaul v. Gilchrist*, 29 N. C., 169; *Shultz v. Young*, 25 N. C., 385; *Hurley v. Morgan*, 18 N. C., 425; *Sandifer v. Foster*, 2 N. C., 237, and, applying the principle to the facts as accepted by the jury, justified the conclusion that the boundaries of defendant's deed were properly placed and included all of the land in controversy.

It was earnestly contended for plaintiffs that the location of the Hawkins lines, declared by the jury to be the eastern and southern boundaries

of defendant's deed, should not be allowed to stand, because the evidence as to some portions of these lines failed to show that they had ever been run or marked, and, therefore, they could not properly be considered as "fixed and established" within the meaning of the principle; but if it be conceded that the rule requiring that the lines of another's tract called for in a deed should be "fixed and established with precision" applies in this case, the authorities are to the effect that these lines need not necessarily have been "run and marked," but if they are fixed and established by the usual rules adopted and recognized in the survey and location of deeds they may come within the meaning of the rule and so fill the description. *Corn v. McCrary,* 48 N. C., 496, cited in *Lumber Co. v. Bernhardt,* 162 N. C., pp. 460, 465.

As a matter of fact, this doctrine, requiring that the lines of another tract, called for in a deed, shall be fixed and established with assured precision, is one that is, at times, called for where there is conflict in a deed between such calls and that by course and distance, and does not always or necessarily prevail in deeds of the kind presented here, where no such conflict is presented.

It was further objected for plaintiffs that the declarations of John A. Boyden were received in evidence in support of defendant's claim of ownership. In the brief of plaintiffs the objection was made to rest on the ground that this suit, not being an action to correct or reform the deed, the declarations of John A. Boyden in contradiction of the description, appearing in the deed, were inadmissible, but this position is not open to plaintiffs on the record, for the reason that his Honor, in the charge, told the jury in very explicit terms that such declarations could in no wise change the description as it appeared in the deed, and that these declarations were only relevant on the question of boundary and in so far as they tended to fix the location of the lines as called for.

In that aspect of the evidence the only declarations having appreciable significance or which could have affected the result were as to the existence and placing of the Hawkins lines on the east and south of the tract, as claimed by defendant, and these were made at a time when John A. Boyden, as trustee, was in possession and control of the property, having a survey and examination made, and with a view of executing this very deed under which defendant claims, and such declarations were competent, both as being against interest and by one in possession of property defining the limit of his claim. *Smith v. Moore,* 142 N. C., pp. 277-290; *Ellis v. Harris,* 106 N. C., 395; *Clifton v. Fort,* 98 N. C., 173; *McGee v. Blankinship,* 95 N. C., 563.

True, as to the position of the land in controversy, John A. Boyden may have been only a trustee, and the declarations of a mere trustee are not, as a general rule, competent as against the interest of the bene-

ficiary; but the position does not obtain where, as in this instance, the declarations were made in the course and performance of declarant's duties as trustee and when he was in present possession and control of the land, asserting his ownership under the deed. Chamberlain's Evidence, sec. 1327; 2 Ed. Jones on Evidence, sec. 253, p. 319.

As heretofore stated, we find no reversible error in the trial, and the judgment for defendant must be affirmed.

No error.