CLARK, C. J., dissenting.
Civil action to try the title to a tract of land situate in Macon County on or near the Nantahala River, and at the trial it was admitted that
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 170 N.C. 708.]
the defendant owned the southern part of the land covered by Grant No. 3487, approximately the portion below the tentative line Y, and that plaintiff owned the land adjoining and up to the line of said grant. By *Page 709 
reason of these agreements, the title to the part of the land in dispute was properly made to depend on the correct location of (627) the southern line of said grant, plaintiff contending that the true location was a straight line from C to 1, and defendants that it ran from C with the courses of the river to 2.
The descriptive calls of the grant in question are as follows: "Beginning at a Spanish oak on the east face of Grindstone Knob, at or near N. S. Jarrett's line (A), runs N. 70 W. 30 poles to a white oak (B); thence S. 10 W. 208 poles to a spruce pine on the river (C); thence S. 83 W. 260 poles down the river to a spruce pine on the cliff (1 or 2); thence N. 30 E. 190 poles to a chestnut, near W. Wilson's house (E); then N. 21 E. 180 poles to a maple in Mason's line (F); thence S. 65 E. 180 poles to a hickory, Mason's and Wilson's corner (9); thence to the beginning.
There was evidence tending to show that the point C was on the river and that the line from C "down the river" was not run or marked when the survey and entry were made or grant taken out, and much testimony tending to show that the terminal point of this line was at (1), as contended for by plaintiff, same being on a cliff, 100 yards from the river, and also evidence for defendant tending to show that the true location of this terminal point was on the river at (2).
The annexed plat will be of assistance in explaining the position of the respective parties.
An issue was submitted and answered by then jury as follows:
"Q. Is the true location of the southwest corner of Grant No. 3487 at the point on the court map marked `Hemlock Stump' (fig. 1), as contended for by plaintiff? Answer: Yes."
On the verdict, there was judgment for plaintiff, and defendants excepted and appealed.
After stating the case: Among the established rules governing the law of boundary in this State, it has been held:
a. That what are the termini or boundaries of a tract of land, a grant, or deed, is a matter of law; where these termini are is a matter of fact. The court must determine the first, and to the jury it belongs to ascertain the second. Where there is a call for natural objects, and course and distance also given, the former are the termini and the latter merely points or guides to it, and, therefore, when the natural object called for is unique or has properties peculiar to itself, course and distance are disregarded, but where there are several natural objects *Page 710 
equally answering the description, course and distance may be examined to ascertain which is the true object, for in such case they do not control a natural boundary, but only serve to explain a latent ambiguity. (628) This position was so stated by Henderson, J., delivering the opinion in Tatem Baxter v. Paine Sawyer, 11 N.C. 64, and has been approved and upheld in numerous decisions of the Court. LumberCo. v. Bernhardt, 162 N.C. 460, 464; Lumber Co. v. Hutton, 152 N.C. 537;159 N.C. 445; Sherod v. Battle, 154 N.C. 346; Mitchell v. Welborn,149 N.C. 347; Whitaker v. Cover, 140 N.C. 280; Bonapart v.Carter, 106 N.C. 534; Com. v. McCrary, 48 N.C. 496, and many other cases.
b. Where a call of a grant or deed is along an ascertained line or natural boundary to a known or established terminus or corner, and said line or natural boundary will not reach the designated point, the usual rule for locating such a description is to run the line of the description as far as it will go, or to the nearest point to the corner called for, and then a direct line to such corner. The case of Shultz v. Young, 25 N.C. 385, is in illustration of the position, and the general principle was approved in the recent case of Boyden v. Hagaman, 169 N.C. 204.
In Shultz's case it was held: "Where part of the description of the boundary of a tract of land, contained in a grant, was from a certain point `south with A.B.'s line 310 poles to C.D.'s old corner,' and A.B.'s line did not reach C.D.'s corner, nor run in the direction towards it, but at the expiration of the 310 poles on A.B.'s line you had to run nearly at right angles to arrive at C.D.'s corner: Held, that you must run on A.B.'s line 310 poles and then a straight line to C.D.'s corner, as by doing so you would best conform to the whole description of the deed, though you would run two lines instead of one called for." And Gaston, J., delivering the opinion, among other things, said: "Prima facie a call in a grant for one terminus to another is understood to mean a direct line from the former to the latter point. But assuredly there may be accompanying words of description which will indicate that the line is not to be a direct line. Thus it is of ordinary occurrence that when the call is with a river or creek from one terminus to another, the river or creek, however crooked its direction or numerous its courses if it will carry you to the proposed terminus, must be followed throughout. Nor could there be any difficulty in holding that if the call were for a county line or the line of another tract, or a marked line, such line, however sinuous or indirect, if it ended at the terminus called for, must be faithfully followed. In these cases, and cases like these, the whole of the description of the thing granted is obviously consistent, and every part of it by this construction receives its full effect. You go from one terminus to another, and you go by the guide which you are *Page 711 
directed to follow. But when the terminus cannot be reached merely by following the mode pointed out in the description, the question occurs, Shall this mode be wholly disregarded or shall it be observed so far as it is represented as leading to the terminus, and then to be relinquished for a direct line to the terminus? Herein it appears that the law distinguishes between the degrees of certainty which different (629) descriptions hold forth. If the description be one by course and distance only, it is clear that such description is disregarded, and the line is in law a direct line from one point to the other. But if it be by permanent natural boundary, then the description is regarded as sufficiently certain to require that it should be respected, and the line must pursue that description so far as it conducts towards the terminus. This is fully established in Sandifer v. Foster, 1 Hay., 237, which is always referred to as a leading authority on the question of boundary."
c. Again, it is the recognized position "That in determining the boundary of land none of the calls must be disregarded when they can be fulfilled by any reasonable way of running the line, which will be defeated only when necessary to give effect to the intent of the parties as expressed in the instrument; a position upheld in Bowen v. Lumber Co.,153 N.C. 366; Miller v. Bryan, 86 N.C. 167; Clark v. Wagner, 76 N.C. 463;Long v. Long, 73 N.C. 370; Shultz's case, supra.
Referring again to the last case, Judge Gaston, speaking to the rule, said: "Now, independently of the peculiar respect which natural boundaries command with us, this decision is proper on general principles. By following the line referred to in the description, so far as it leads towards the terminus or is expressly directed, the call for the terminus is not disregarded. The terminus is still reached, though not reached by the direct line which would have been presumed to be intended had that call been the only description. But by running a direct line to the terminus, a part of the description, which is perfectly intelligible and which was assuredly designed to aid in ascertaining the thing granted, is wholly rejected. It is a leading rule in the construction of all instruments that effect should be given to every part thereof; and in expounding the descriptions in a deed or grant of the subject-matter thereof they ought all to be reconciled, if possible, and as far as possible. If they cannot stand together, and one indicate the thing granted with superior certainty, the other may be disregarded as a mistaken reference. But so long and so far as they may stand together, each of them may be considered as declaring the intent of the parties."
In further illustration of these principles, and on facts more directly relevant to the case presented in the record, it has been several times held in this State, and the position is in accord with authoritative decisions elsewhere, that where a call of a deed is from an ascertained or *Page 712 
fixed point on a natural water-course, a river or well defined creek or swamp, "thence up or down the same," the correct method of location, as a general rule, is that the line follows the stream to next point called for, if the same is placed on the stream. McPhaul v. Gilchrist,29 N.C. 169; Rogers v. Mabe, 15 N.C. pp. 180-194; Smith v. Auldridge, 3 N.C. 382; Hartsfield v. Westbrook, 2 N.C. 258; Brown v.(630) Huger, 62 U.S. pp. 305-320-321. Or if near it and the stream, to the nearest point and then to the corner indicated.
In Rogers v. Mabe the call was "thence west up the river to a stake," and it was held that the line must pursue the course of the stream, andRuffin, C. J., speaking to the question, said: "The Court considers it settled upon authority that up the river is the same as along the river, unless there be something else beside course and distance to control it. InHartsfield v. Westbrook, 2 N.C. 258, `thence down the swamp' was held to mean along the swamp. In that case no course was given, and for that reason the argument was that a direct line from the corners called for in the deed was the boundary; but it was held otherwise. But in Smith v. Auldridge,3 N.C. 382, the description was, `thence 50 degrees east, down the creek to a whiteoak,' and the question was whether a straight line from the white oak to the preceding corner was the boundary, and it was held the former. We believe these cases have since governed many others," etc.
In Hartsfield v. Westbrook, on a call from a poplar in a swamp thence down the swamp to the beginning, held that the swamp and not a straight line from the poplar to the beginning is the boundary.
In Brown v. Huger, supra, the Court, speaking to this question, said: "The citation from the treatise by Angell on Water-Courses fully declares the rule to be that where a line is described as running in a certain direction to a river, and thence up or down with the river, those words imply that the line is to follow the river according to its meanderings and turnings, and in water-courses not navigable must be ad medium filumaquae." Upon a question of boundary, in the case of Jackson v. Low in the 12th of Johnson's Reports, 255, in ejectment, the Court, in construing a provision in a deed in these words, "leading to the creek, and thence up the same to the southwest corner of a lot," etc., say: "There can be no doubt but this lot must follow the creek upon one of its banks or through the middle. This description can never be satisfied by a straight line. The terms `up the same' necessarily imply that it is to follow the creek according to its windings and turnings, and that must be the middle or center of it."
It is true that in the case of Rogers v. Mabe, Ruffin, C. J., after stating the general rule to be that "up the river" is the same as "along the river," proceeds as follows: "These words might possibly be controlled *Page 713 
by the call in the grant for a line of marked trees or a visible and permanent marked corner, as a stone or tree marked and identified and not standing on the river, as that might show they were used only to denote the general direction of the line," etc.
While this addenda, made only by way of suggestion and in very hesitant language, might, in exceptional cases, be allowed to prevail where a line of trees, as shown, marked, identified, and called for and necessarily drawing the boundary away from the river, the (631) suggestion may not be held for law where the line was not run or marked, and the only diverting fact is the existence of a corner standing away from the stream and not over a hundred yards from it.
The testimony here shows that the land along the river was steep mountain-side, very rugged, and the line was never run. The disputed corner was placed on a cliff, about a hundred yards out from the river, established by the jury at (1), and we find nothing to show that the course called for in the grant would have reached this corner. It is extremely probable, from a perusal of the testimony, that it was only intended to indicate the general course of the stream at the point of departure, and so far as the course is concerned, the call seems to be without significance one way or the other on the true location of the disputed line.
Under the conditions presented, a proper application of the principles stated is, in our opinion, against the conclusion of the court, and, on the facts admitted in the record, and established by the verdict, there should be a verdict entered in favor of defendant. The call being from a known point on the river, "thence S. 83 W. 260 poles down the river to a spruce pine on a cliff," this pine having been fixed by the jury at (1), the correct method of locating the grant is to run with the river to a point opposite (1), and thence a direct course to the pine at (1), inclosing the land in dispute. Such a position gives full recognition of the preference which the law ordinarily gives to natural objects. It takes account of all the calls of the grant which are ascertained and established, and reaches the corner as established by the jury, according to the rule approved inBoyden v. Hagaman, Shultz v. Young, and other cases.
There is nothing in the opinion of Bonapart v. Carter, 106 N.C. 534, that in any way militates against the disposition made of the present appeal. In Bonapart's case, on a call "Beginning on the side of Gallon Creek at a small oak, corner of John Edwards," the Court held that it was open to defendants to show that the beginning corner referred to, a small oak, John Edwards' corner, was 300 yards from the creek, the present ChiefJustice laying down the rule that the reference to the creek was not a call of the boundary, but merely a description of *Page 714 
the locality of the beginning point, definitely described as "a small oak, John Edwards' corner." And the same principle was more recently applied inLumber Co. v. Lumber Co., 169 N.C. 83, Associate Justice Walker
delivering the opinion.
For the reasons stated, we are of opinion there was error in the judgment as rendered, and that the same must be
Reversed.